**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY**
Caption in Compliance with D.N.J. LBR 9004-1(a)

Benesch, Friedlander, Coplan & Aronoff LLP
Michael J. Barrie (NJ No. 033262000)
Kevin M. Capuzzi (NJ No. 173442015)
Continental Plaza II
411 Hackensack Ave., 3rd Floor
Hackensack, NJ 07601-6323
Telephone: (302) 442-7010
Facsimile: (302) 442-7012
mbarrie@beneschlaw.com
kcapuzzi@beneschlaw.com

*Counsel to 710 Route 38 ABL I Holdings, LLC*

| | |
|---|---|
| In re:<br><br>EVERGREEN I ASSOCIATES LLC,<br><br>Debtor. | Chapter 11<br><br>Case No. 21-17116 (CMG)<br><br>Judge: Christine M. Gravelle |
| In re:<br><br>EVERGREEN II ASSOCIATES LLC,<br><br>Debtor. | Chapter 11<br><br>Case No. 21-17118 (CMG)<br><br>Judge: Christine M. Gravelle |
| In re:<br><br>EVERGREEN III ASSOCIATES, LLC,<br><br>Debtor. | Chapter 11<br><br>Case No. 21-17119 (CMG)<br><br>Judge: Christine M. Gravelle |
| In re:<br><br>EVERGREEN PLAZA ASSOCIATES LLC,<br><br>Debtor. | Chapter 11<br><br>Case No. 21-17120 (CMG)<br><br>Judge: Christine M. Gravelle<br><br>**Hearing Date: October 5, 2021** |

**MOTION OF 710 ROUTE 38 ABL I HOLDINGS, LLC FOR ENTRY OF
AN ORDER DISMISSING THE DEBTORS' CHAPTER 11 CASES WITH PREJUDICE
OR, IN THE ALTERNATIVE, GRANTING RELIEF FROM THE AUTOMATIC STAY**

Secured lender and judgment creditor, 710 Route 38 ABL I Holdings, LLC ("Lender"),[1] by and through its undersigned counsel, hereby moves (this "Motion") this Court, for entry of an order, a proposed form of which is attached hereto as **Exhibit 1**, pursuant to sections 1112(b) and 305(a) of title 11 of the United States Code (the "Bankruptcy Code"), (i) dismissing the chapter 11 cases of the above-captioned debtors (the "Debtors") for cause and with prejudice pursuant to section 349(a) of the Bankruptcy Code, or, in the alternative, (ii) granting relief from the automatic stay pursuant to sections 362(d)(1) and (d)(2) of the Bankruptcy Code.  In support of this Motion, Lender submits the accompanying Declaration of Neil Beldock dated September 10, 2021, and the exhibits annexed thereto ("Beldock Declaration"), and respectfully states as follows:

## PRELIMINARY STATEMENT

1.      On September 9, 2021, the Debtors initiated these chapter 11 cases approximately ***thirty minutes*** before Lender was to conduct a court-ordered foreclosure auction, that was twice adjourned at Debtors' request, of the Debtors' only assets, consisting of Real Property defined below, that were pledged to secure approximately $6,500,000 of indebtedness (the "Loan") owed to Lender.

2.      These bankruptcy proceedings were commenced three years after Debtors first defaulted on the Loan, almost thirty-three months since the Lender exercised its rights under the unconditional assignment of rents to the Real Property in the Mortgage, more than two-and-a-half

---

[1]     Lender is the assignee and successor-in-interest to the original lender, Pender Capital Asset Based Lending Fund I, LP ("Pender"), under that certain Assignment of Mortgage and Other Recorded Loan Documents dated August 31, 2021 ("Assignment").  Unless expressly stated otherwise, references in this Motion to "Lender," shall refer, collectively, to 710 Route 38 ABL I Holdings, LLC and Pender.  A true and correct copy of the Assignment of Judgement and Writ of Execution filed in the Chancery Division, including the Assignment, is attached as **Exhibit A** to the Beldock Declaration which is attached hereto as **Exhibit 2**.

years after Lender commenced a foreclosure action on the Real Property, more than two years after a receiver was appointed for the Real Property, and almost one year after judgment was entered in the foreclosure action following contentious and hard fought proceedings.

3.      The Debtors' filing of the chapter 11 petitions for the purpose of triggering an automatic stay is nothing more than a naked attempt to misuse the bankruptcy process and cause further delay to Lender.

4.      This filing will irreparably harm Lender (the Debtors' first-lien secured creditor). The Debtors' chapter 11 filing—which was not accompanied by any first-day motion or affidavit—is yet another step in a series of failed attempts by the Debtors to hinder Lender's rights through frivolous and dilatory litigation.    This filing is simply contrary to the purposes of chapter 11.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2).    Venue of these cases and this Motion are proper under 28 U.S.C. §§ 1408 and 1409.

6.      The statutory predicates for the relief sought herein are sections 105(a), 305(a)(1), 349(a), 362(d)(1), 362(d)(2), and 1112(b) of the Bankruptcy Code and related Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), including Bankruptcy Rules 1017, 2002, 4001, 9013, and 9014, and D.N.J. LBR 4001-1, 9013-1, 9013-2, and 9013-4.

## BACKGROUND

### I.      PROCEDURAL BACKGROUND

7.      On September 9, 2021 (the "Petition Date"), each of Evergreen Plaza Associates LLC ("Evergreen Plaza"), Evergreen I Associates LLC ("Evergreen I"), Evergreen II Associates

LLC ("Evergreen II"), and Evergreen III Associates, LLC ("Evergreen III," collectively with Evergreen Plaza, Evergreen I, and Evergreen II, the "Debtors" and each, a "Debtor") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, commencing these chapter 11 cases.[2]

8.      As of the date of this Motion, no request has been made for the appointment of a trustee or examiner and no statutory creditors' committee has been appointed.

## II.     THE LENDER'S FIRST-LIEN SECURED LOAN TO DEBTORS

9.      Prior to the Petition Date, Pender—the predecessor in interest of Lender—made a $6,500,000 loan ("Loan") to the Debtors that is secured by substantially all of the assets of the Debtors.  To evidence their indebtedness, on or about March 14, 2018, Debtors, as borrowers, executed in favor of, and delivered to, Pender, as lender, a Promissory Note in the principal amount of $6,500,000, with an initial rate of interest of 12.00% (as amended, supplemented, or modified from time to time, the "Note," a true and correct copy of which is attached to the Beldock Declaration as **Exhibit B**).

10.     To secure the observance, payment, and performance of their obligations under the Note, on or about March 14, 2018, Debtors executed in favor of, and delivered to, Pender a Mortgage, Assignment of Rents and Security Agreement (as amended, supplemented, or modified from time to time, the "Mortgage," a true and correct copy of which is attached to the Beldock Declaration as **Exhibit C**).  The Mortgage, Note, and all other documents evidencing, securing, guarantying, or relating to any of Debtors' obligations under the Loan are referred to collectively

---

[2]     No joint administration motion has yet been filed. Thus, this motion is being filed in each case.

as the "<u>Loan Documents</u>".  The Mortgage was duly recorded with the Office of the Burlington

County Clerk on April 5, 2018, as Instrument Number 5374273, in Book OR13328 at Page 9222.

11.     The Mortgage encumbers all that certain tract, lot, and parcel of land situate and

lying in the Townships of Mount Holly and Lumberton, Burlington County, known as (i) Lot 2 in

Block 117.02 on the Township of Mount Holly Tax Map and Lot 4.01 in Block 22 on the Township

of Lumberton Tax Map, and (ii) Lot 2.04 and Lot 2.05 in Block 117.02 on the Township of Mount

Holly Tax Map and Lot 4.10 in Block 22.01 on the Township of Lumberton Tax Map, being

commonly known as S. Pemberton Road and 1722 Route 38, Mt. Holly, NJ 08060, as more

particularly described in the Mortgage (the "<u>Real Property</u>").  A true and correct copy of the metes

and bound description of the Real Property is attached as **Exhibit D** to the Beldock Declaration.

12.     The Real Property consists primarily of a shopping center known as "Evergreen

Plaza," comprised of approximately 90,000 square feet of commercial space including unoccupied

space.  The shopping center has approximately six tenants consisting of, among others, a Dollar

Tree, a furniture store, a hardware store, restaurants, and a nail salon (the "<u>Tenants</u>").

13.     To induce Pender to make the Loan, and to provide additional security of its

repayment thereof and the repayment of any other indebtedness owed by the Debtors to Pender,

the Mortgage contains a provision entitled "Assignment of Rents; Appointment of Receiver;

Lender in Possession" (the "<u>Assignment of Rents</u>").  Mortgage § 3.  The Assignment of Rents

provides that "[a]s part of the consideration for the indebtedness, Borrower absolutely and

unconditionally assigns and transfers to Lender all Rents." *Id.* at § 3(a). The Assignment of Rents

further provides that "[i]t is the intention of Borrower to establish a present, absolute and

irrevocable transfer and assignment to Lender of all Rents and to authorize and empower Lender

to collect and receive all Rents without the necessity of further action on the part of Borrower."

5

*Id.*  Lender is expressly permitted, upon an event of default, to provide notice to Tenants and instruct them to pay rents to Lender.  Mortgage § 3(b).  Further, "Borrower shall not interfere with and shall cooperate with Lender's collection of such Rents."  *Id.*

14.    Pursuant to the Assignment of Rents, Debtors agreed that:

> If an Event of Default has occurred and is continuing, regardless of the adequacy of Lender's security of the solvency of Borrower and even in the absence of waste, enter upon and take and maintain full control of the Mortgaged Property in order to perform all acts that Lender in its discretion determines to be necessary or desirable for the operation and maintenance of the Mortgaged Property, including the execution, cancellation or modification of Leases, the collection of all Rents, the making of repairs to the Mortgaged Property and the execution or termination of contracts providing for the management, operation or maintenance of the Mortgaged Property, for the purposes of enforcing the assignment of Rents …, protecting the Mortgaged Property or the security of this instrument, or for such other purposes as Lender in its discretion may deem necessary or desirable. Alternatively, if an Event of Default has occurred and is continuing, regardless of the adequacy of Lender's security, without regard to Borrower's solvency and without the necessity of giving prior notice (oral or written) to Borrower, Lender may apply to any court having jurisdiction for the appointment of a receiver for the Mortgaged Property….  If Lender elects to seek the appointment of a receiver for the Mortgaged Property at any time after an Event of Default has occurred and is continuing, Borrower, by its execution of this instrument, expressly consents to the appointment of such receiver, including the appointment of a receiver *ex parte* if permitted by applicable law….

Mortgage § 3(d).[3]

15.    On or about September 13, 2018, Debtors executed in favor of, and delivered to, Pender an Amendment to the Mortgage (the "<u>Amendment to the Mortgage</u>"), which was duly recorded with the Burlington County Clerk on October 2, 2018, as Instrument Number 5413200, at Book OR13356, at Page 1848.  A true and correct copy of the Amendment to the Mortgage is attached as **Exhibit E** to the Beldock Declaration.

---

[3]    All rents for the Real Property are Lender's property pursuant to the absolute and unconditional assignment of the rents to Lender in the Mortgage.  *See First Fidelity Bank, N.A. v. Jason Realty, L.P.* (*In re Jason Realty, L.P.*), 59 F.3d 423, 427 (3d Cir. 1995) ("It is settled in New Jersey that an assignment of rents passes title to the assignee.").  Lender reserves all rights with respect to its property interest in the rents.

16.     On or about August 31, 2021, Pender, as assignor, and 710 Route 38 ABL I

Holdings, LLC, as assignee, entered into that certain Assignment of Mortgage and Other Recorded

Loan Documents ("Assignment") assigning all of Pender's rights under the Loan Documents to

710 Route 38 ABL I Holdings, LLC.  A true and correct copy of the Assignment of Judgement

and Writ of Execution filed in the Chancery Division, including the Assignment, is attached as

**Exhibit A** to the Beldock Declaration.

## III.   THE DEBTORS DEFAULT UNDER THE NOTE AND MORTGAGE AND LENDER OBTAINS A FINAL JUDGMENT IN FORECLOSURE

17.     The Mortgage provides that an event of default shall occur upon, among other

things, "any failure by [Debtors] to pay or deposit when due any amount required by the Note, this

[Mortgage], or any other Loan Document." *See* Beldock Declaration, Ex. C (Mortgage) § 22(a).

The Note further provides that payments shall be payable by Debtors in consecutive monthly

installments due and payable on the first day of each calendar month. *See* Beldock Declaration,

Ex. B (Note) § 3(d).  Debtors are in default for, among other things, failure to make payment under

the Note, in full or in part, on December 1, 2018, January 1, 2019, and thereafter. *See* Beldock

Declaration ¶ 19.

18.     In addition, the Note provides that the Loan, including all principal and interest, is

fully due and payable on the Maturity Date of April 1, 2019. *See* Beldock Declaration, Ex. B

(Note) § 1(a) and § 3(e).  The failure to repay the Loan on the Maturity Date is an Event of Default

under both the Note and the Mortgage. *See id.* at § 1(b); *see also* Beldock Declaration, Ex. C

(Mortgage) at § 22(a).

19.     In addition to the payment and maturity defaults, there are other events of default

under the Mortgage, including (i) the failure to pay real estate taxes when due (*see* Beldock

Declaration, Ex. C (Mortgage) at § 22(g) & 15(a)); (ii) the imposition of a municipal tax lien on

the Property (*id.* at § 22(f)); and (iii) the further encumbering of the Real Property with a second mortgage (the "Second Mortgage") without notice to or the consent of Lender (*id.* at § 16 & § 21).[4] *See also* Beldock Declaration ¶ 21.  A true and correct copy of the Second Mortgage is attached as **Exhibit F** to the Beldock Declaration.

20.    Lender sent default notices to Debtors on December 11, 2018 and January 23, 2019 (collectively, the "Default Notices") and accelerating the debt and demanding the rents for the Real Property under the assignment of rents in the Mortgage.  True and correct copies of the Default Notices are attached as **Exhibit G** to the Beldock Declaration.

21.    On January 28, 2019, Pender further exercised its rights under the assignment of rents by mailing all of the tenants of the Real Property a notice of Debtors' defaults and demanding that all rents be turned over to Pender (the "Rent Demand Letter").  A true and correct copy of a Rent Demand Letter to one of the Tenants is attached as **Exhibit H** to the Beldock Declaration.

22.    On February 12, 2019, Pender filed a *Complaint in Foreclosure* in the Superior Court of New Jersey, Chancery Division for Burlington County (Case No. SWC-F-002953-19) (the "Foreclosure Action").

23.    On May 17, 2019, Lender filed a separate action against the Debtors and their principal, Nicholas J. Aynilian ("Aynilian"), in the Superior Court of New Jersey, Law Division for Burlington County (Case No. BUR-L-001037-19) (the "Law Action").  The Law Action remains pending as of the filing of this Motion awaiting a decision on Lender's motion for summary judgment which was fully briefed and argued on January 22, 2021.

---

[4]    Notably, Debtors' proposed counsel filed the Second Mortgage on behalf of the alleged second-lien holders (*see* Beldock Declaration Ex. F) and represented both the alleged second-lien holders and the Debtors in the Foreclosure Action.  Lender reserves all rights regarding proposed Debtors' counsel's retention in these bankruptcy cases.

24.     On August 26, 2019, while the Foreclosure Action was pending, the Debtors allowed the Real Property to fall into a state of disrepair and a receiver (the "Receiver") was appointed by order of the Chancery Division (the "Original Receiver Order").  A true and correct copy of the orders Original Receiver Order is attached to the Beldock Declaration at **Exhibit I**.

25.     The Debtors and their principal, Aynilian, refused to cooperate with the Receiver as required under the Original Receiver Order.   On October 11, 2019, shortly after the Receiver was appointed, the Receiver filed a letter in the Foreclosure Action (the "Receiver Letter") detailing multiple issues with the Debtors and the Real Property including, without limitation,

   a.     Aynilian threatened the Receiver while on the phone with Debtors' then-counsel stating "I'll bury you."  Receiver Letter at 4.

   b.     Debtors and Aynilian refused to turn over rents that were incorrectly sent to the Debtors instead of to the Receiver on multiple occasions until threatened with a contempt motion.  *Id.* at 1.

   c.     Multiple Tenants has exercised self-help and withheld rent prior to the commencement of the receivership due to Debtors' failure to maintain the Real Property.  *See id.* at 1 & Ex. D thereto

   d.     One tenant has been submitting their rent to the county sheriff because of Debtors' failure to pay a real estate commission.  *Id.* at 1.

   e.     Prior to the Receiver's appointment, the Real Property received a violation summons from Lumberton township for failure to maintain landscaping and trash.  *Id.* at 1 & Ex. G thereto.

A true and correct copy of the Receiver Letter is attached to the Beldock Declaration at **Exhibit J**.

26.     On February 21, 2020, the order appointing the Receiver was amended (the "Amended Receiver Order," and together with the Original Receiver Order, the "Receiver Orders"), due to ongoing misconduct by the Debtors and Aynilian, and the Receiver's powers were expanded and the Debtors and their principals were expressly enjoined from interfering with the Real Property.  A true and correct copy of the Amended Receiver Order is attached to the Beldock Declaration at **Exhibit K**.

27.     The Amended Receiver Order provides, among other things, that the Receiver "unequivocally and *exclusively* possesses the following powers … to enter into, renew, extend, cancel, or modify, any existing or new leases … [and] to operate, manage, and lease the [Real] Property, and to market the [Real] Property for lease …."  Amended Receiver Order ¶ 7.  The Amended Receiver Order further enjoins the Debtors and Aynilian from operating or even entering upon the Real Property.  *See id.* at ¶ 10.  The Receiver continues to operate and maintain the Real Property, including the collection of rents, for more than two years prior to the Petition Date.

28.     On February 28, 2020, Lender filed a motion for summary judgment in the Foreclosure Action.  However, the Debtors obtained multiple adjournments delaying the hearing on summary judgment until July 10, 2020.  The Court granted summary judgment in favor of Lender on July 15, 2020 (the "Summary Judgment Order").  A true and correct copy of the Summary Judgment Order is attached to the Beldock Declaration as **Exhibit L**.

29.     On October 19, 2020, the Chancery Division overruled the Debtors' motion to remove the Receiver (the "Order Denying Removal of Receiver"), yet another attempt by the Debtors to interfere with the Receiver, holding that the Debtors "fail[ed] to present this court with a valid argument for the removal of the [Receiver]," that the Debtors' complaints were not "sufficient to support any claim of mismanagement on the [R]eceiver's part," and that the removal of the Receiver "would merely unnecessarily complicate an already complicated situation."  A true and correct copy of the Order Denying Removal of Receiver is attached to the Beldock Declaration as **Exhibit M**.

30.     On November 10, 2020, the Chancery Division entered an order sustaining in part an objection of the Debtors to the final amount due holding, among other things, that the total amount due was $8,587,887.36 plus per diem interests from October 1, 2020 of $3,551.55 (the

"Order on Amount Due"). A true and correct copy of the Order on Amount Due is attached to the Beldock Declaration as **Exhibit N**.

31.     On November 13, 2020, a Final Judgment of Foreclosure (the "Foreclosure Judgment"), together with a Writ of Execution ("Original Writ"), was entered in the Foreclosure Action in the amount of $8,591,437.90 as of September 30, 2020 plus attorneys' fees and interest. A true and correct copy of the Foreclosure Judgment and Original Writ is attached to the Beldock Declaration as **Exhibit O**.

32.     Pender was unable to expose the Real Property to sale because the Burlington County Sheriff was not conducting sales due to the ongoing COVID-19 pandemic. As such, Pender moved to have the Receiver appointed as special master to conduct a sale which was approved over Debtors' objections.

33.     The Writ of Execution was reissued on May 12, 2021 (the "Reissued Writ") to allow the Receiver, appointed by the Chancery Division as special master, to conduct the foreclosure sale of the Real Property (the "Foreclosure Sale"). A true and correct copy of the Reissued Writ is attached to the Beldock Declaration as **Exhibit P**.

34.     The Foreclosure Sale of the Real Property was originally scheduled to occur on June 17, 2021 at 12:00 p.m. ET (the "Originally-Noticed Sale"). Beldock Declaration ¶ 47.

35.     On June 14, 2021, the Debtors requested a thirty (30) day adjournment of the Originally-Noticed Sale pursuant to N.J.S.A. § 2A:17-36 (the "First Adjournment Request"). *Id.* ¶ 48.

36.     The Foreclosure Sale of the Real Property was rescheduled to July 22, 2021, at 12:00 p.m. ET (the "First Re-Noticed Sale"). *Id.* ¶ 49.

37.     On July 19, 2021, the Debtors requested their second and final thirty (30) day adjournment of the First Re-Noticed Sale, pursuant to N.J.S.A. § 2A:17-36 (the "Second Adjournment Request"). *Id.* ¶ 50.

38.     The Foreclosure Sale was then further adjourned to September 9, 2021 at 12:00 p.m. ET (the "Scheduled Sale"). *Id.* ¶ 51.  A true and correct copy of the Second Notice of Adjourned and Rescheduled Sale noticing the Scheduled Sale, filed on July 21, 2021, is attached to the Beldock Declaration as **Exhibit Q**.

39.     Less than one hour before the Scheduled Sale was to occur, the Debtors filed these bankruptcy cases.  Beldock Declaration ¶ 53.

40.     As of the Petition Date, the Lender was owed not less than $9,020,761.09 under the Foreclosure Judgment (in addition to the amounts accruing under the Note and other Loan Documents).  Beldock Declaration ¶ 54.

41.     No agreement regarding adequate protection has been reached between Lender and Debtors.

## **RELIEF REQUESTED**

42.     Lender seeks entry of an order pursuant to sections 1112(b) and 305(a) of the Bankruptcy Code dismissing the Debtors chapter 11 cases for cause and with prejudice pursuant to section 349(a) of the Bankruptcy Code.

43.     In addition, and in the alternative, Lender seeks entry of an order granting relief from the automatic stay pursuant to sections 362(d)(1) and (d)(2) of the Bankruptcy Code allowing (i) the Lender to conduct the Foreclosure Sale, and (ii) the Receiver to continue to collect the rents (which are solely Lender's property) and manage the Real Property in accordance with the orders entered by the Chancery Division.

## BASIS FOR THE RELIEF REQUESTED

**I.   THIS CASE SHOULD BE DISMISSED WITH PREJUDICE FOR "CAUSE" PURSUANT TO SECTION 1112(b) OF THE BANKRUPTCY CODE**

44.     This chapter 11 case should be dismissed with prejudice because the Debtors filed their petition in bad faith (indeed, less than one hour before the scheduled foreclosure sale following years of litigation in state court) and have no reasonable prospect of reorganization. Section 1112(b) of the Bankruptcy Code, provides, in pertinent part, that:

> [O]n request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.

11 U.S.C. § 1112(b)(1).  A request for dismissal under section 1112(b) must be scheduled by the Court no later than 30 days after filing of the motion, and must be decided by the Court no later than 15 days after commencement of the hearing, unless the movant expressly consents to a continuance for a specific period of time or "compelling circumstances" prevent the Court from meeting the time limits. 11 U.S.C. § 1112(b)(3).

45.     "Chapter 11 bankruptcy petitions are subject to dismissal under 11 U.S.C. § 1112(b) unless filed in good faith and the burden is on the bankruptcy petitioner to establish good faith." *Cross-Appellees v. BEPCO, LP* (*In re 15375 Mem'l Corp.*), 589 F.3d 605, 618 (3d Cir. 2009) (quotations omitted). Although the phrase "good faith" suggests an inquiry into the debtor's subjective intent in filing a bankruptcy petition, the Third Circuit has firmly held that the "good faith" filing requirement is "based more on objective analysis of whether the debtor has sought to step outside the 'equitable limitations' of Chapter 11 than the subjective intent of the debtor." *Id.* at 618 n.8; *see also Official Comm. of Unsecured Creditors v. Nucor Corp.* (*In re SGL Carbon Corp.*), 200 F.3d 154, 165 (3d Cir. 1999).  In assessing a debtor's good faith, the

bankruptcy court must consider "the totality of facts and circumstances" to determine where the bankruptcy petition falls "along the spectrum ranging from the clearly acceptable to the patently abusive." *Id.* at 162.

46.     The Third Circuit has identified two essential elements for a "good faith" bankruptcy filing. First, the bankruptcy petition must "serve[] a valid bankruptcy purpose." *NMSBPCSLDHB, L.P. v. Integrated Telecom Express, Inc.* (*In re Integrated Telecom Express, Inc.*), 384 F.3d 108, 120 (3d Cir. 2004).  Second, the bankruptcy cannot be filed "merely to obtain tactical litigation advantage." *15375 Memorial*, 589 F.3d at 625 (citation omitted).

47.     Moreover, in determining whether a filing was made in bad faith, courts in the Third Circuit have also considered whether the following factors are present: (a) single asset case; (b) few unsecured creditors; (c) no ongoing business or employees; (d) petition filed on eve of foreclosure; (e) two-party dispute that can be resolved in pending state court action; (f) no cash or income; (g) no pressure from non-moving creditors; (h) previous bankruptcy petitions; (i) prepetition conduct was improper; (j) no possibility of reorganization; (k) debtor formed immediately prepetition; (l) the debtor filed solely to create automatic stay; and (m) the subjective intent of the debtor.  *See In re Jer/Jameson Mezz Borrower II, LLC*, 461 B.R. 293, 298-99 (Bankr. D. Del. 2011) (quoting *In re Primestone Investment Partners L.P.*, 272 B.R. 554, 557 (D. Del. 2002)); *see also In re Mondelli*, 2013 WL 1187098, at *4 (D.N.J. Mar. 21, 2013), *aff'd*, 558 F. App'x 260 (3d Cir. 2014) ("In determining whether a bankruptcy filing was made in bad faith, the bankruptcy court looks to the totality of the circumstances, and may consider a wide range of factors …."") (citation omitted).

48.     The District of New Jersey has similarly articulated the following factors in determining whether the bankruptcy filing was in bad faith:

(i)     The Debtor has only one asset, the Property, in which it does not hold legal title

(ii)    The Debtor has few unsecured creditors whose claims are small in relation to the claims of the Secured Creditors;

(iii)   The Debtor has few employees;

(iv)    The Property is the subject of a foreclosure action as a result of arrearages on the debt;

(v)     The Debtor's financial problems involve essentially a dispute between the Debtor and the secured creditors which can be resolved in the State Court Action; and

(vi)    The timing of the Debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the Debtor's secured creditor to enforce their rights.

*In re Y.J. Sons & Co., Inc.*, 212 B.R. 793, 802 (D.N.J. 1997). As that court explained, "[t]he more objectively clear it is that the debtor cannot reorganize, it is concomitantly more difficult to conclude that the debtor's subjective belief in its ability to reorganize is in good faith." *Id.* (citing *In re Roxy Real Estate Co., Inc.*, 170 B.R. 571, 573 (Bankr. E.D. Pa. 1993)); *see also In re Mondelli*, 2013 WL 1187098, at *4 ("Importantly, the suspicious timing of a bankruptcy petition is an appropriate factor for a court to consider in this bad faith analysis.").

49.     For the reasons set forth below, these factors are met here and the cases should be dismissed.

**A.      The Debtors' Cases Serve No Valid Bankruptcy Purpose**

50.     The basic purposes of chapter 11 are "preserving going concerns," and "maximizing property available to satisfy creditors." *Integrated Telecom*, 384 F.3d at 119 (citation omitted). Liquidation and distribution of the debtor's estate to stakeholders, standing alone, are not valid bankruptcy purposes justifying chapter 11 relief. *Id.* at 126. Instead, "[w]here there is no going concern to preserve," the debtor must affirmatively prove that a chapter 11 liquidation would "maximize value," *United States Tr. v. Stone Fox Capital LLC (In re Stone Fox Capital*

*LLC*), 572 B.R. 582, 590 (Bankr. W.D. Pa. 2017) (citing *15375 Memorial*, 589 F.3d at 619), which means that "the sale process contemplated in the bankruptcy case must be designed to realize some value that would not be available outside of bankruptcy." *Jameson*, 461 B.R. at 303.

51.     Here, the Debtors are not a "going concern" capable of reorganization because their primary asset is the Real Property which has been operated and maintained by the court-appointed Receiver for more than two years pending the outcome of the Foreclosure Action.  *See* Beldock Declaration ¶¶ 29-35 & Exs. I & K; *see also 15375 Memorial*, 589 F.3d at 619 (no "going concern" where debtor had "no employees, offices or business other than the handling of litigation…").  To establish a valid bankruptcy purpose, the Debtors must therefore show the chapter 11 case will maximize the value of the Debtors' estates, and that such value would be lost outside of bankruptcy.  *15375 Memorial*, 589 F.3d at 619.  The Debtors here cannot make such a showing.

52.     The Debtors have no likelihood of rehabilitation or reorganization because they are prohibited from selling the Real Property, the Debtors' sole asset, by the Receiver Orders.  *See* Beldock Declaration, Exs. I & K.  Specifically, the Amended Receiver Order "enjoin[s] and restrain[s]" the Debtors from, among other things, (i) "[e]ntering upon the [Real] Property at any time during the pendency of the receivership; (ii) "[d]isposing of, dissipating, mishandling, or misappropriating the [Real] Property or such other property relating to the operation of the [Real] Property (except to immediately provide any [Real] Property or property related thereto to the Rent Receiver)"; and (iii) "entering into, or causing to be entered into any … agreements relating to the [Real] Property during the pendency of the Receivership." *Id.* at Ex. K at ¶ 10.

53.     Indeed, the court in *Y.J. Sons* found that the debtors had filed the petition in bad faith where they were no longer operating, or in possession of, their single, real property asset.  *See*

16

212 B.R. at 802-03.  The Debtors here similarly are not operating or in possession of the Real

Property and are further enjoined from doing so by court order.

54.    Rather, the Debtors' purpose in seeking chapter 11 relief here advances a singular

and improper goal: to obtain the benefit of the automatic stay and halt the state-law foreclosure

process in favor of an alternative process of liquidating and distributing the Debtors' assets, which

the Debtors perceive will be more favorable to their principal, Aynilian.  But the Third Circuit has

held consistently that a debtor's bald desire to obtain the protections of the automatic stay is not a

valid justification for seeking bankruptcy relief and has upheld the dismissal of cases under factual

circumstances similar to those presented by this case. *See, e.g.*, *15375 Memorial*, 589 F.3d at 620;

*Integrated Telecom*, 384 F.3d at 128; *see also Stone Fox*, 572 B.R. at 591 ("Filing a bankruptcy

case to obtain the protection of the automatic stay is not a valid purpose; rather the stay is a benefit

of a good faith filing.").

55.    The Debtors attempted to invoke the automatic stay less than an hour before the

Scheduled Sale to thwart the foreclosure process that has already been drug out for almost three

years due to the Debtors' dilatory tactics.  The chapter 11 cases are thus not commenced in good

faith and should be dismissed under section 1112(b) of the Bankruptcy Code.

56.    Additionally, the Debtors have no source of cash or income because Lender has all

rights to the rents from the Real Property which are being collected by the Receiver, further

weighing in favor of a finding of bad faith.  *See Jameson*, 461 B.R. at 298-99.

**B.    The Debtors' Cases Were Commenced Primarily to Obtain a Tactical
Litigation Advantage**

57.    A chapter 11 case is also subject to dismissal if it was commenced primarily to

obtain a tactical litigation advantage. *See 15375 Memorial*, 589 F.3d at 605; *SGL Carbon*, 200

F.3d at 165; *see also In re GVS Portfolio I B, LLC*, 2021 WL 2285285, at *9 (Bankr. D. Del. June

4, 2021) (dismissing bankruptcy proceeding filed in bad faith and holding that "the fact that this case was filed immediately before foreclosure in order to obtain the automatic stay coupled with the two-party nature of the dispute between the Debtor and [the secured creditor], supports the finding that this case was filed by the Debtor for a tactical advantage against [the secured creditor] in the … state court litigation that resulted in a foreclosure sale."); *In re Rent-A-Wreck of Am., Inc.*, 580 B.R. 364, 387 (Bankr. D. Del. 2018) (dismissing chapter 11 petition as bad faith filing where primary purpose was to circumvent unfavorable ruling in prepetition litigation against primary creditor).

58.     The tactical advantages gained by the Debtors in commencing this case are manifest.  Similar to *Jameson* and *GVS Portfolio*, the Debtors' chapter 11 petitions automatically stayed the pending foreclosure sale *less than an hour* before it was set to begin and without any showing whatsoever by the Debtor.  This is significant because the Debtors could not obtain similar relief outside of bankruptcy.  Indeed, the Debtors had already adjourned the Foreclosure Sale the maximum number of times allowed under N.J.S.A. § 2A:17-36.  *See* Beldock Declaration ¶¶ 47-51 & Ex. Q.  Moreover, the bankruptcy filing also saddled Lender with the burden of coming forward to affirmatively seek relief from the Debtors' abusive filings.  In light of the foregoing, this Court should dismiss the Debtors' chapter 11 cases because the Debtors' filings were impermissible and were "clearly just a litigation tactic designed to forestall [Lender's] efforts to foreclose on its collateral . . . ." *See Jameson*, 461 B.R. at 300.

## C.     Additional Indicia of Bad Faith Are Present Here

59.     The Court should also dismiss the Debtors' chapter 11 case because it involves an overwhelming majority of the additional factors courts consider in determining whether a

bankruptcy petition was filed in bad faith.  In fact, as discussed below, all factors enumerated by

the court in *Y.J. Sons & Co.* are present here.

### 1.    The Debtors have only one asset

60.    As previously noted, the Debtors' sole asset is the Real Property.  Although "there

is nothing inherently improper in a single asset debtor filing" for chapter 11 bankruptcy,

*Primestone Inv. Partners*, 272 B.R. at 558, courts have uniformly held that this factor weighs

against a finding of good faith on the part of the debtor.  *See, e.g.*, *Jameson*, 461 B.R. at 299

(chapter 11 filing by junior mezzanine lender was in bad faith where, among other things, "Mezz

II ha[d] only one asset (the membership interest in Mezz I)"); *Primestone Inv. Partners*, 272 B.R.

at 558 (same); *see also SGL Carbon*, 200 F.3d at 165 (same); *In re Y.J. Sons & Co., Inc.*, 212 B.R.

at 804 (D.N.J. 1997) (affirming dismissal of bankruptcy case as bad faith filing where debtor's

purpose was to sell its sole asset "on better terms than those given by the Superior Court").

### 2.    The Debtors have few unsecured creditors whose claims are small in relation to the claims of Lender

61.    The Debtors' petitions list few unsecured creditors, several of whom are insiders,

whose claims are dwarfed in relation to the Lender's which is now in excess of $9 million.

62.    Two of the Debtors, Evergreen II and Evergreen III, list no unsecured creditors on

their petitions.

63.    Evergreen I lists five unsecured creditors whose claims range from $12,700 to

$173,199.42 including three trade creditors, a loan from the Small Business Administration, and

the New Jersey Department of Environmental Protection.  However, it is unclear whether the three

listed trade creditors have valid claims as the Receiver previously noted that the invoices for their

work date back to 2016 and as early as 2015.  *See* Beldock Declaration, Ex. J (Receiver Letter) at

p.2 (discussing Technical Management Support, LLC, Caramanno Concrete and Paving, and

Giordano's New Age Construction).    Moreover, at least one of those alleged creditors (Caramanno) displayed "inferior workmanship." *Id.*

64.    Evergreen Plaza lists fourteen unsecured creditors but most of those appear to be insiders of the Debtors and their principal, Aynilian, including, without limitation, Vanick Properties Inc.,[5] Aynilian Family Trust, Linix Realty, LLC,[6] Colonial Fiduciary Management Corporaiton [*sic*], EGAD Limited, Hamilton-Franklin Associates, LLC, GB Capital, M.J. Realty Associates, LLC, Elizabeth Aynilian Trust, IHB Associates, BBB&L Holdings, and Crave Hazelton, LLC, all of whom have identical addresses.    After removing all of the insider creditors, Evergreen Plaza is left with two unsecured creditors, the U.S. Small Business Administration[7] and the State of New Jersey Division of Taxation with claims of $68,200 and $11,700, respectively.

65.    Courts have recognized that an unsecured claims pool that consists predominantly of insiders or professional fee claims weighs in favor of a finding of bad faith. *See, e.g.*, *In re EFL Partners X*, 2013 WL 4508423, at *5 (Bankr. E.D. Pa. Aug. 23, 2013) (holding debtor did not file petition in good faith and finding that debtor's four unsecured creditors, one was an insider and two were professionals); *St. Paul Self Storage Ltd. P'ship v. Port Auth.* (*In re St. Paul Self Storage Ltd. P'ship*), 185 B.R. 580, 583 (B.A.P. 9th Cir. 1995) (the debtor's "lack of creditors, other than insiders and its own professionals, further indicated . . . that protection under the Bankruptcy Code was not necessary to a . . . legitimate reorganization").

---

[5]    The website for Vanick Properties includes in its "About Us" page that it was founded by Aynilian.    *See* https://www.vanickproperties.com/pages/about_us/about_us.htm (last visited Sept. 9, 2021).

[6]    The Vanick Properties website also lists Linix Realty under the heading "Our Services". *See* http://www.vanickproperties.com/pages/about_us/linix.htm (last visited Sept. 9, 2021).

[7]    It is unclear if this claim for the Small Business Administration overlaps with the claim listed by Evergreen I.

66.     Further, there is no indication that any unsecured creditors, even assuming they have valid claims, have been exerting pressure on or commenced collection efforts against the Debtors prior to the bankruptcy filing.  *See Jameson*, 461 B.R. at 299 (the debtor's creditors, "if they [even] are creditors, were exerting no pressure on [the debtor] before the filing").  Indeed, some of the alleged unsecured creditors' claims appear to date back five years or more.  *See* Beldock Declaration, Ex. J at p.2.

### 3.     The Debtors Have Few, if Any, Employees

67.     Lender does not believe that Debtors have any employees other than, perhaps, Aynilian.  Nor would the Debtors have need of any employees because it has no ongoing business and the Receiver has been imbued with all authority to maintain and operate the Debtors' sole asset, the Real Property.  *See* Beldock Declaration at Exs. I & K.

### 4.     The Real Property Is the Subject of a Foreclosure Action as a Result of Arrearages on the Debt

68.     As discussed above, the Real Property is the subject of the Foreclosure Action that resulted in Summary Judgment Order and Foreclosure Judgment, both in favor of Lender as successor-in-interest to Pender.  *See* Beldock Declaration at Exs. L & O.

### 5.     The Debtors' Financial Problems Are, At Bottom, a Two-Party Dispute Between the Debtors and Lender Which Have Been Largely Been Resolved in State Court

69.     The Debtors' bankruptcy proceedings are really a two-party dispute that has already been at least partially resolved in the Foreclosure Action that has resulted in a final judgment in foreclosure (the Foreclosure Judgment) and may be finally resolved by a ruling on Pender's motion for summary judgment in the Law Action that has been fully briefed and argued.  *See* Beldock Declaration ¶¶ 28, 42 & Ex. O.

70.     Courts generally hold in these circumstances that such a dispute does not belong in bankruptcy court. *See, e.g.*, *In re GVS Portfolio I B, LLC*, 2021 WL 2285285, at *9 (holding that "this is certainly a dispute between the Debtor and [its secured creditor]," and "nothing that need happen in this Court that cannot happen in state court"); *In re Scarborough-St. James Corp.*, 2015 WL 5672628, at *2 (Bankr. D. Del. Sept. 24, 2015) (dismissing a "two-party dispute" between debtor and its landlord relating to entitlement to rents from debtor's sole material real estate asset); *Jameson*, 461 B.R. at 299 (dismissing case where Court found it "involve[d] only a two-party dispute" between two competing lenders); *In re SB Properties, Inc.*, 185 B.R. 198, 205 (E.D. Pa. 1995) (dismissing debtor's petition where filing was "no more than a thinly veiled litigation tactic in a two party . . . dispute."); *In re Asanda Air II LLC*, 600 B.R. 714, 722 (Bankr. N.D. Ga. 2019) ("[T]his reorganization essentially involves the resolution of a two-party dispute . . . as the Debtor's 'financial problems' stem solely from [a] [s]tate [c]ourt [p]roceeding and the underlying contract dispute [with the debtor's sole major creditor]").

**6.      The Timing of the Debtors' Filings (Less than One Hour Before the Scheduled Sale) Evidences an Intent to Delay or Frustrate the Legitimate Efforts of the Debtors' Secured Creditor, Lender, to Enforce Its Rights**

71.     The Debtors filed their cases mere *minutes* before the Scheduled Sale after two prior 30-day adjournments and nearly three years of litigation in the Foreclosure Action.  Courts have repeatedly held under similar circumstances that such timing is highly suggestive of bad faith. *See, e.g.*, *In re Mondelli*, 2013 WL 1187098, at *4 (affirming bankruptcy court's dismissal of bad faith filing where petition was filed on the morning of the twice-adjourned sheriff's sale and based on the bankruptcy court's finding that "[i]t couldn't be more obvious [that the] debtor's motive in filing the [March 14 Petition] was to stay the [Sheriff's] sale. Again."); *Jameson*, 461 B.R. at 299-300; *Stone Fox Capital*, 572 B.R. at 586 (filing was in bad faith where bankruptcy proceeding

commenced four days before sheriff's sale of collateral); *cf. SureFunding*, 2020 WL 8834902, at

*5 (finding bad faith where, "[a]lthough not filed on the eve of a foreclosure, the petition was filed

merely a day after [a] receivership order was entered[]" against the debtor and its property); *In re*

*SB Properties, Inc.*, 185 B.R. at 205 (dismissing petition where debtor filed for bankruptcy

immediately prior to state court appraisal of debtor's sole asset in connection with court-ordered

sale).

### D.    Dismissal of the Chapter 11 Cases Should Be with Prejudice Pursuant to Sections 105(a) and 349(a) of the Bankruptcy Code

72.    Section 349(a) of the Bankruptcy Code provides in relevant part that "[u]nless the

court, for cause, orders otherwise, the dismissal of a case under this title does not . . . prejudice the

debtor with regard to the filing of a subsequent petition under this title …." 11 U.S.C. § 349(a).

Pursuant to section 105(a) of the Bankruptcy Code, the Court may "tak[e] any action or mak[e]

any determination necessary or appropriate to enforce or implement court orders or rules, ***or to***

***prevent an abuse of process***." 11 U.S.C. § 105(a) (emphasis added).

73.    A bankruptcy court may apply its inherent powers under sections 105(a) and 349(a)

to dismiss a debtor's chapter 11 case with prejudice and prohibit subsequent filings where the

debtor commenced its bankruptcy case for an improper purpose and in bad faith.  *See Jameson*,

461 B.R. at 304 (dismissing case with prejudice due to bad faith filing).  Dismissal with prejudice

is also appropriate where necessary to prevent the debtor from obtaining an unfair advantage in

ongoing disputes outside of the bankruptcy court.  *See, e.g.*, *Scarborough-St. James Corp.*, 2015

WL 5672628, at *3 ("Court [] prohibit[ed] Debtor from filing another bankruptcy petition for a

period of four months" to allow debtor's landlord to obtain relief in pending state court

proceeding); *In re Riverbend Cmty., LLC*, 2012 WL 1030340, at *4-5 (Bankr. D. Del. Mar. 23,

2012) (dismissing case with prejudice and enjoining subsequent petition until after foreclosure sale

occurred); *see also In re Class A Props. Five, LLC*, 600 B.R. 27, 38-39 (Bankr. N.D. Ill. 2019) (dismissal of prior bad faith bankruptcy with prejudice barred debtor from filing subsequent bankruptcy).

74.    Here, it is necessary for the Court to dismiss the Debtors' cases with prejudice to prevent the Debtor from attempting to file a successive petition in this or another jurisdiction to further forestall Lender's Foreclosure Sale and the Law Action, and otherwise frustrate Lender's rights with respect to its collateral.  Lender and its predecessor-in-interest, Pender, have vigorously and extensively marketed the opportunity to purchase the collateral at the foreclosure sale. As a consequence of the Debtors' bad faith filing, Lender has suffered significant setbacks in completing the Foreclosure Sale (twice-adjourned by Debtors), has incurred significant enforcement costs, and faces the risk of material diminution of the value of its collateral as a result of further delay.   Accordingly, Lender respectfully submits that the Court should order the dismissal of the Debtors' chapter 11 cases with prejudice and prospectively enjoin any further filings by the Debtors to prevent any further harm to the Lender.

## II.    IN THE ALTERNATIVE, THE COURT SHOULD GRANT RELIEF FROM THE AUTOMATIC STAY

75.    Section 362(d)(1) of the Bankruptcy Code provides that the bankruptcy court "shall" grant relief from the automatic stay on request of a party in interest "for cause, including the lack of adequate protection of an interest in property of such party in interest . . . ." 11 U.S.C. § 362(d)(l). If the movant makes a prima facie case for "cause" for relief, the burden of going forward shifts to the debtor pursuant to section 362(g) of the Bankruptcy Code. *See Izzarelli v. Rexene Prods. Co.* (*In re Rexene Prods. Co.*), 141 B.R. 574, 576 (Bankr. D. Del. 1992).   The burden of proof on the issue of whether a secured creditor's interest in property is adequately

protected, however, belongs at all times to the debtor. *See* 11 U.S.C. § 362(g)(2); *Wilmington Savs.*

*Fund Soc. v. 1025 Assocs., Inc.* (*In re 1025 Assocs., Inc.*), 106 B.R. 805, 810 (Bankr. D. Del. 1989).

76.    In addition, under section 362(d)(2) of the Bankruptcy Code, the stay of an act

against property must be lifted if "the debtor does not have an equity in such property" and "such

property is not necessary for an effective reorganization." 11 U.S.C. § 362(d)(2). The movant

requesting relief from the stay under section 362(d)(2) bears the burden of proof as to the debtor's

equity in the property, at which point the burden shifts to the debtor to prove the feasibility of

reorganization. *See* 11 U.S.C. § 362(g); *1025 Assocs.*, 106 B.R. at 810.

77.    "Filing bankruptcy in bad faith is 'cause' for relief under [] section 362(d)(1)."

*Mother African Union Methodist Church v. Conference of AUFCMP Church* (*In re Conference of*

*African Union First Colored Methodist Protestant Church*), 184 B.R. 207, 218 (Bankr. D. Del.

1995); *see In re Lippolis*, 228 B.R. 106, 112 (E.D. Pa. 1998) (stay relief granted based upon

debtor's bad faith filing); *In re Merchant*, 256 B.R. 572, 576-77 (Bankr. W.D. Pa. 2000) (finding

bad faith filing can constitute "cause" for relief from the stay, noting it is an "abuse of § 362 . . .

when a debtor has no intention of effectuating a realistic plan of reorganization.").

78.    As demonstrated above, the Debtors filed their bankruptcy petitions in bad faith.

Lender is the Debtors' primary creditor, and the only asset of the Debtors is the Real Property,

which constitutes Lender's Collateral.  The Debtor commenced this chapter 11 case less than one

hour before Lender's Scheduled Sale to dispose of such collateral. The Debtors have no operating

business, no employees, no bondholders, and no material unsecured creditors. In short, the

Debtors' bankruptcy filings accomplish little more than to frustrate the exercise of legitimate,

bargained-for rights by the Debtors' secured creditor.  Accordingly, Lender respectfully submits

that cause exists to lift the automatic stay to permit Lender to proceed with a foreclosure sale of its collateral, the Real Property, in accordance with state law.

## III.    WAIVER OF THE FOURTEEN-DAY STAY UNDER BANKRUPTCY RULE 4001(a)(3) IS WARRANTED

79.    Courts may waive the fourteen-day stay under Bankruptcy Rule 4001(a)(3) based upon the totality of the circumstances and as an equitable remedy.  *See In re Eclair Bakery Ltd.*, 255 B.R. 121, 143 n.42 (Bankr. S.D.N.Y. 2000) (stay under Rule 4001(a)(3) waived due to debtor's unclean hands); *In re Soltzfus*, 2009 WL 2872860, at *7 (Bankr. E.D. Pa. Mar. 30, 2009) (stay under Rule 4001(a)(3) waived due to debtor's improper filing of bankruptcy case).

80.    Here, the Debtors' bad faith filing of their chapter 11 cases, where Debtors clearly lack any ability to effectively reorganize, combined with the risk to the value of Lender's collateral as discussed above, all warrant a waiver of the fourteen-day stay.  Moreover, given that Lender was *minutes* away from holding the Schedule Sale and disposing of its collateral (after protracted delays caused by the Debtors' in the Foreclosure Action), it would be inequitable for Lender to be forced to wait any longer.  Accordingly, Lender respectfully requests that the Court waive the fourteen-day stay period under Bankruptcy Rule 4001(a)(3).

WHEREFORE, the Lender therefore respectfully requests that the Court enter an order, substantially in the form attached hereto as Exhibit 1, (i) dismissing the chapter 11 cases; or (ii) in the alternative, granting Lender relief from the automatic stay to conduct the Foreclosure Sale; and (iii) granting such other and further relief that is just and proper under the circumstances.

Dated:  September 10, 2021                    Respectfully submitted,

                                             BENESCH, FRIEDLANDER, COPLAN
                                             & ARONOFF LLP

                                              _/s/ Kevin M. Capuzzi_____
                                             BENESCH, FRIEDLANDER, COPLAN &
                                             ARONOFF LLP
                                             Michael J. Barrie
                                             Kevin M. Capuzzi (NJ No. 173442015)
                                             Continental Plaza II
                                             411 Hackensack Ave., 3rd Floor
                                             Hackensack, NJ 07601-6323
                                             Telephone: (302) 442-7010
                                             Facsimile: (302) 442-7012
                                             mbarrie@beneschlaw.com
                                             kcapuzzi@beneschlaw.com

                                             *Counsel for 710 Route 38 ABL I Holdings, LLC*