**RIKER DANZIG SCHERER HYLAND & PERRETTI LLP**
Joseph L. Schwartz, Esq. (JS-5525)
Tara J. Schellhorn, Esq. (TS-8155)
Rachel G. Atkin, Esq. (RA-4910)
Headquarters Plaza
One Speedwell Avenue
Morristown, New Jersey 07960
(973) 538-0800
jschwartz@riker.com
tschellhorn@riker.com
ratkin@riker.com

*Proposed Counsel to the Debtors and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>EVERGREEN I ASSOCIATES, LLC, et al.,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 21-17116 (CMG)<br><br>(Joint Administration Requested)<br><br>Judge: Christine M. Gravelle |

**DEBTORS' (I) RESPONSE TO MOTION OF 710 ROUTE 38 ABL I HOLDINGS, LLC FOR ENTRY OF AN ORDER EXCUSING RECEIVER FROM COMPLYING WITH CUSTODIAL TURNOVER REQUIREMENTS AND KEEPING RECEIVER IN POSSESSION AND CONTROL OF THE MORTGAGED PREMISES AND RENTS PURSUANT TO 11 U.S.C. § 543(d) AND (II) CROSS-MOTION FOR ENTRY OF AN ALTERNATIVE FORM OF ORDER PURSUANT TO 11 U.S.C. § 543**

Evergreen I Associates, LLC ("Evergreen I"), Evergreen II Associates, LLC ("Evergreen II"), Evergreen III Associates, LLC ("Evergreen III"), and Evergreen Plaza Associates, LLC ("Evergreen Plaza"), the debtors and debtors-in-possession (each a "Debtor" and collectively, the "Debtors"), by and through their undersigned counsel, hereby submit this: (i) Response (the "Response") to the Motion filed 710 Route 38 ABL Holdings 1, LLC as successor-in-interest to

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are as follows: Evergreen I Associates, LLC (5258); Evergreen II Associates, LLC (5300); Evergreen III Associates, LLC (5332); and Evergreen Plaza Associates, LLC (5141).

Pender Capital Asset Based Lending Fund I, LLP (the "Lender") for entry of an order (i) excusing IVL Group, LLC (the "Rent Receiver") from compliance with section 543(a), (b), and (c) of the Bankruptcy Code, (ii) permitting the Rent Receiver to retain possession, custody, and control of certain real property of the Debtors, and (iii) excusing the Rent Receiver from turning over the property and any proceeds, from filing an accounting of the property and any proceeds, and from being surcharged for any improper or excessive disbursements from the property [Docket No. 15] (the "Lender's 543 Motion"), and (ii) Cross-Motion (the "Cross-Motion") for entry of an alternative form of order pursuant to section 543 of the Bankruptcy Code (the "Proposed Alternative Order").  In support of this Response and Cross-Motion, the Debtors respectfully submit as follows:

## PRELIMINARY STATEMENT

Contrary to the Lender's tale, the Debtors filed their bankruptcy cases with a clear good faith goal in mind, i.e. to obtain replacement financing in order to refinance and repay the Lender.  In contrast, the Lender's motives and goals are transparent and, at best, questionable.  The Lender clearly does not want this case to move forward in the ordinary course like virtually every other Chapter 11 case, and obviously does not want to give the Debtors the opportunity to refinance and repay the Lender.  Instead, the Lender seeks to prevent the Debtors from making any progress at all in an effort to put everything "on ice" so that its motion to dismiss can be heard by the Court before anything substantive can occur in these cases.  The Lender's strategy is transparently designed to promote its arguments that the Debtors are purportedly not using bankruptcy for a proper purpose, all in a disingenuous effort to seize and obtain title to the Property.

The Lender's 543 Motion is yet another attempt by the Lender to further its own agenda. Indeed, the Debtors agree (and in fact indicated to the Lender before it even filed its 543 Motion) with virtually all of the relief sought in the Lender's 543 Motion, except for certain very limited modifications needed for the Debtors to move their cases forward. However, rather than communicate with the Debtors in an effort to reach a consensual resolution, the Lender instead has sought to control the process and engage in delay. The transparent efforts by the Lender to thwart the Debtors' reorganization are a bad faith effort to deny the Debtors the benefits of the bankruptcy proceedings. As a result, the Debtors seek the assistance of the Court to right the ship and request that the Court enter the Debtors' alternative form of order on an expedited basis so that the Debtors are granted a real opportunity to reorganize.

## STATEMENT OF RELEVANT FACTS AND PROCEDURAL HISTORY

### A. The Debtors' Property

1. The Debtors own commercial property located at S. Pemberton Road and 1722 Route 38, Mt. Holly, New Jersey 08060 (the "Property"). The Property consists of approximately twenty (20) contiguous acres divided as follows: (i) a shopping center known as "Evergreen Plaza" located on approximately 11.5 acres of land with 88,000 square feet of retail space occupied by various commercial tenants; (ii) approximately 7.5 acres of vacant real estate suitable for commercial or residential multi-family usage; and (iii) approximately one (1) acre of vacant real estate suitable for retail development.

### B. The Loan/Foreclosure/Receiver

2. On or about March 14, 2018, the Lender made a loan to the Debtors in the principal amount of $6.5 million (the "Loan"). As security for repayment of the Loan, the Debtors executed and delivered to the Lender a promissory note in the principal amount of

$6,500,000.00 (the "Note"), secured by a Mortgage, Assignment of Rents and Security Agreement, as subsequently amended (the "Mortgage") encumbering the Property.

3. On February 12, 2019, the Lender commenced a foreclosure action titled Pender Capital Asset Based Lending Fund I, LP in the Superior Court of New Jersey, Chancery Division, Burlington County (the "Superior Court"), Docket No. SWC-F-002953-19 (the "Foreclosure Action").

4. On August 26, 2019, on the Lender's motion and over the objection of the Debtors, the Superior Court entered an Order Appointing Rent Receiver to Maintain the Mortgaged Property, dated August 26, 2019 ("Receivership Order") appointing IVL Group, LLC as receiver ("Rent Receiver"), which was amended by subsequent orders dated February 21, 2020 and October 19, 2020 ("Receivership Orders").

5. The Receivership Orders provided the Rent Receiver with various duties and powers, including the obligation to enter into, renew, extend and modify any existing or new leases.

6. The Receivership Orders also gave the Rent Receiver the duty to manage the Property and to market the Property for lease and/or to enter into agreements to hire management companies, brokers and leasing agents.

7. The Receivership Orders specifically enjoined the Debtors and their agents from, among other things, entering upon the Property without the prior written permission of the Rent Receiver and negotiating with tenants at the Property.

8. On November 13, 2020 the Superior Court entered a Final Judgment of Foreclosure in favor of the Lender in the principal amount of $8,591,437.90, together with an award of statutory attorneys' fees in the amount of $7,500.00 and post-judgment interest.

9. The foreclosure sale of the Property was scheduled to proceed on September 9, 2021 at 12:00 noon.

C. **The Bankruptcy Cases**

10. On September 9, 2021 (the "Petition Date"), the Debtors filed with this Court voluntary petitions for relief pursuant to Chapter 11 of the Bankruptcy Code, thereby commencing the above-captioned bankruptcy cases (the "Bankruptcy Cases") and staying the scheduled foreclosure sale.

11. On September 13, 2021, the Court conducted a status conference in these cases. During that status conference, the Debtors advised the Court that the Debtors filed these bankruptcy cases in an effort to obtain a breathing spell needed to obtain replacement financing, refinance and repay the Lender, and make progress towards their ultimate goal developing their entire real property.

12. As is set forth at length in the Initial Declaration of Nicholas J. Aynilian, Sr. in Support of the Debtors' Chapter 11 Petitions and Related Motions [Docket No. 23], the Debtors' ultimate goal of continuing to develop those areas of the Property that have not yet have been developed for multi-family residential and/or commercial retail use has been stalled due to ongoing litigation with the Lender (or its assignor predecessor).

D. **The DIP Term Sheet Letter Agreement**

13. In furtherance of their goal in these cases to obtain replacement financing that will be used to refinance and repay the Lender, shortly before the Petition Date, the Debtors reached an agreement with a prospective refinancing debtor-in-possession lender, Urban Bay Housing Fund, LLC ("Urban Bay"), concerning funding for an $8 million debtor-in-possession ("DIP")

loan. In connection with that agreement, the Debtors executed a term sheet letter agreement with Urban Bay, contingent upon approval of this Court (the "DIP Term Sheet Letter Agreement").

14. The DIP Term Sheet Letter Agreement remains subject to certain conditions precedent, including (i) approval of this Court, (ii) certain due diligence; (iii) site inspection, title, survey and lien review, leases (including estoppels from existing tenants), tenants' financials, environmental review, and valuation review; and (iv) the renewal of certain tenant leases.

15. Very importantly, a good portion of the DIP loan with Urban Bay has already been underwritten, and the Debtors understand that Urban Bay is prepared to move quickly to hopefully bring the DIP loan to closing, which is an important first step towards moving these bankruptcy cases forward. With an anticipated DIP loan closing date (which DIP loan would also need approval from this Court) of October 27, 2021, time is of the essence.

16. As a result, on September 16, 2021, the Debtors filed a motion to approve the DIP Term Sheet Letter Agreement (the "DIP Term Sheet Motion"), along with certain other pleadings and an Application for Expedited Consideration (the "Application for Expedited Consideration").[2]

17. As set forth in the DIP Term Sheet Motion, the relief requested is a necessary first step to moving these cases forward. Importantly, there is no risk borne by the Debtors' estates in approving the relief requested, as the Debtors' principal, Mr. Aynilian, has "put his money where his mouth is," so to speak, and has wired the $25,000 good faith deposit to the proposed DIP

---

[2] Not surprisingly, yet inexplicably, the Lender opposed the Application for Expedited Consideration [Docket No. 26]. The Court entered an order over the Lender's objection [Docket No. 27] and scheduled a hearing on, *inter alia*, the DIP Term Sheet Motion for September 21, 2021 at 3:30 p.m..

lender, as required by the DIP Term Sheet Letter Agreement (as defined in DIP Term Sheet Motion).

### E. Negotiations Concerning Section 543 Relief and the Lender's Motion

18. Immediately prior to the Petition Date, the Debtors began to engage in discussions with the Rent Receiver regarding the Property. Among other things, the Debtors sought to reach an agreement on the role of the Rent Receiver going forward. In connection with these discussions, the Debtors never sought to oust the Rent Receiver. To the contrary, the Debtors were focused on reaching a consensual resolution with the Rent Receiver that maintained the status quo at the Property while allowing the Debtors to advance their goals of refinancing and repaying the Lender while obtaining the necessary access to the Property, as well as necessary information from the Rent Receiver, to both obtain a loan commitment from the proposed DIP lender and to prepare their bankruptcy schedules and statements of financial affairs. The Debtors communicated this Chapter 11 goal to the Lender very shortly after the Petition Date. (See the accompanying Certification of Joseph L. Schwartz (the "Schwartz Cert.") at Exhibit A).

19. After negotiations and discussions over several days, during the week of September 13, 2021, the Debtors and the Rent Receiver reached an agreement in principle whereby the Rent Receiver would remain in possession of the Property, pursuant to the Receiver Orders, subject to certain limited modifications.

20. Based upon this understanding, and with the express consent of the Rent Receiver, the Debtors prepared a consent order with the Rent Receiver memorializing the terms of the arrangement, with the belief that this agreement would also avoid unnecessary litigation and be agreeable to the Lender because it maintained the status quo. In fact, on the afternoon of September 15, 2021, the Debtors expressly advised the Lender that they were speaking with the

Rent Receiver "regarding terms of the [Rent] Receiver staying in" and further advised the Lender that the Debtors "assume that you will have no problems with the solution." (See Schwartz Cert. at Exhibit B). Unfortunately, the Lender had different plans.

21. While the Debtors were in the process of preparing the consent order with the Rent Receiver, and a few hours after the Debtors advised the Lender of the "solution," on the evening of September 15, 2021, the Lender filed the Lender's 543 Motion, wherein the Lender seeks to, among other things, excuse the Rent Receiver from complying with the turnover requirements of section 543 of the Bankruptcy Code. See Docket No. 15.

22. As outlined below, the Debtors agreed with much of the relief sought by the Lender. In fact, the Proposed Alternative Order provides for the same.

23. Additionally, immediately after the proposed consent order with the Rent Receiver was drafted, in an effort to resolve this matter, on the morning of September 17, 2021, the Debtors sent a copy of the proposed consent order to the Rent Receiver and his counsel (see Schwartz Cert. at Exhibit C), as well as to the Lender (see Schwartz Cert. at Exhibit D).

24. Despite the fact that the Debtors' proposed consent order with the Rent Receiver provided the Lender with virtually everything the Lender requested in the Lender's 543 Motion, the situation deteriorated rapidly – with the Lender refusing to even review the consent order. (Schwartz Cert. at Exhibit E). In fact, despite having sent the proposed consent order with the Rent Receiver to the Lender on the morning of September 17, to date, the Lender has **never** even commented on the proposed consent order. Next, the Rent Receiver abruptly changed course by refusing to engage any further with the Debtors unless the Debtors reached an agreement with the Lender. (See Schwartz Cert. at F).

25. As a result of the Lender's refusal to engage in any discussions concerning the proposed consent order with the Rent Receiver, the Debtors were forced to file this Response and Cross-Motion seeking to have an alternative form of order entered on an expedited basis in order to move these bankruptcy cases to move forward.

## **RESPONSE AND CROSS-MOTION FOR REQUESTED RELIEF**

26. Section 543(b) of the Bankruptcy Code provides, in part, that a custodian shall "deliver to the trustee [or the Debtor] any property of the debtor held by or transferred to such custodian, or proceeds, product, offspring, rents, or profits of such property, that is in such custodian's possession, custody, or control on the date that such custodian acquires knowledge of the commencement of the case…" and file an accounting of such property. 11 U.S.C. § 543(b).

27. Section 543(d) provides an exception to section 543(b) insofar as, after notice and a hearing, the Court "may excuse compliance with subsections (a), (b) or (c) of [section 543] of the interest of creditors . . . would be better served by permitting a custodian to continue in possession, custody, or control of such property," 11 U.S.C. § 543(d)(1).

28. Here, the Lender endeavors to paint the Debtors in an obstreperous light by filing a motion seeking to excuse the Rent Receiver from compliance with section 543. However, such a request was not necessary. The Debtors had already agreed to such relief with the Rent Receiver, and in fact so advised the Lender. As a result, **the Lender's 543 Motion is essentially uncontested** but for certain very limited modifications requested by the Debtors to allow the Debtors to further their reorganization efforts.[3] These modification were outlined in the consent order to whose terms the Rent Receiver had already agreed in principle and that the Lender

---

[3] Although the Debtors essentially do not oppose the relief requested in the Lender's 543 Motion, the Debtors certainly dispute many of the factual allegations contained therein, which are inaccurate and self-serving. In the interest of brevity, however, there is no need for the Debtors to address these allegations specifically at this time.

9

refused to even review, and which are now incorporated into the Proposed Alternative Order submitted herewith.

    29.    More specifically, the Debtors propose the following:

- The Receiver Orders shall remain in full force and effect, except as expressly set forth in the Consent Order, and the Rent Receiver shall continue to manage the Property, as provided for in the Receivership Orders, subject to the proposed modifications.

- The Rent Receiver shall retain Colliers (a commercial broker/leasing agent in South Jersey that specializes in commercial retail leasing) as the Rent Receiver's commercial broker/leasing agent, to market the Property for lease,[4] and the Rent Receiver shall take all steps to allow Colliers to lease the Property, including but not limited to, providing Colliers with the necessary keys or lockbox arrangement in order to market the Property for lease.

- The Rent Receiver shall cooperate with the Debtors and provide the Debtors' counsel and/or Colliers (but not the Debtors' principal, Nicholas Aynilian) with reasonable access to the Property for the purpose of assisting the Debtors' potential debtor-in-possession lender(s) to perform due diligence items, conduct inspections and prepare reports in connection with potential debtor-in possession financing.

- The Rent Receiver shall take all necessary steps to attempt to finalize lease renewals with Jaron's Furniture of Lumberton, Inc. and any other expiring leases.

- The Rent Receiver shall provide the Debtors with copies of all term sheets, draft leases, leases and lease renewal documents as and when those term sheets, draft leases and lease renewal documents are exchanged with tenants, and/or provide the Debtors with summaries of the terms thereof, and in no event shall the Rent Receiver finalize new leases and/or any lease renewals with tenants or reject any proposals for new leases or lease renewals without first providing the Debtors with the foregoing documents and/or information. In addition, the Debtors shall be permitted to communicate directly with Collier regarding all prospective leasing arrangements and related issues.

- The Rent Receiver shall also provide the Debtors with access to all books and records of the Debtors, and the Rent Receiver shall provide the Debtors with an accounting of all of the Debtors' property, including an accounting of all rents received by the Rent Receiver since his appointment and an accounting of the uses and dispositions of those rental proceeds

---

[4] The Rent Receiver has already taken steps to retain Colliers and has represented to Colliers that their engagement as commercial broker/leasing agent will begin on October 16, 2021. See Schwartz Cert. at Exhibit G.

10

30. The entry of the Proposed Alternative Order is critical to the Debtors' efforts to expeditiously and effectively restructure and emerge from Chapter 11 bankruptcy. The modifications to the Receivership Orders are very limited and are narrowly tailored to effectuate the Debtors' plan to refinance and repay the Lender without modifying the Lender's current arrangement with the Rent Receiver.

31. The Debtors do not seek to control the Property. The Debtors do not seek to collect rents. Instead, the Debtors' proposed modifications (to which the Rent Receiver has agreed in principle) focus primarily on (i) having the Rent Receiver retain Collier as the Rent Receiver's new leasing agent/commercial broker, which is already in progress, and (ii) ensuring that the Debtors have reasonable access to the Property to allow the proposed DIP lender to perform due diligence and to ensure that certain leases are renewed. In order to alleviate concerns, the Debtors' principal has agreed not to engage directly on any of these items and, instead, the Rent Receiver will work through the Debtors' counsel or Collier.

32. Finally, the Debtors request an accounting and access to the books and records in order to enable the Debtors' to prepare their schedules and statements of financial affairs.

33. In short, the Debtors seek to essentially maintain the status quo except for this limited relief, which is necessary to move the Debtors towards a potential reorganization. Unfortunately, this is contrary to the Lender's objective to seize the Property and hold this case in abeyance until the hearing on the Lender's motion to dismiss so that the Lender can argue that the Debtors supposedly do not have a reorganization in prospect. Allowing the Lender to hold these bankruptcy cases hostage is improper and should not be permitted by the Court.

34. As a result, the Debtors request that the Court enter the Proposed Alternative Oder as soon as practicable, which will allow the Debtors an opportunity to make progress and

reorganize. The Lender's attempt to force a different outcome should not be permitted to drive this process.

## WAIVER OF MEMORANDUM OF LAW

35. Pursuant to D.N.J. LBR 9013-2, the Debtors respectfully request that the Court waive the requirement that it file a memorandum of law in support of its Cross-Motion. No memorandum of law is necessary because no novel issues of law are presented herein.

## CONCLUSION

WHEREFORE, for all the foregoing reasons, the Debtors respectfully request that the Court enter the Proposed Alternative Order, and grant such other and further relief as the Court deems just and equitable.

Dated: September 20, 2021
Morristown, New Jersey

Respectfully submitted,

RIKER DANZIG SCHERER HYLAND & PERRETTI LLP

By: /s/ Joseph L. Schwartz
      Joseph L. Schwartz

*Proposed Counsel to the Debtors and Debtors-in-Possession*

5307603v2